J-A04009-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JESUS  GARCIA | : | |
| | : | |
| Appellant | : | No. 2573 EDA 2018 |

Appeal from the Judgment of Sentence Entered August 22, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0012694-2015

BEFORE:   PANELLA, P.J., STRASSBURGER, J.[*], and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.:                    **FILED JUNE 08, 2020**

Jesus Garcia appeals from the judgment of sentence, entered on August 22, 2018, of an aggregate term of 21 to 42 years' imprisonment, in the Court of Common Pleas of Philadelphia County, after a jury convicted him of one count each of murder in the third degree and abuse of a corpse.[1]  On appeal, Appellant claims the trial court erred by admitting evidence regarding his cell phone activity in the hours following the murder and by failing to charge the jury on voluntary and involuntary manslaughter.[2]   After review, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.
[1] 18 Pa.C.S.A. §§ 2502(c) and 5510, respectively.

[2] On appeal, Appellant abandons the claim the trial court erred in denying his motion to suppress raised in his Rule 1925(b) statement.

Appellant lived with Maria Santiago and her children. Maria would call her mother, Luz, at least once every day. However, Luz last spoke with Maria on Friday, December 5, 2014. Similarly, Maria's daughter did not hear from her mother after December 5.

Maria's daughter attempted to call her mother multiple times on December 6 but was never able to reach her. Twice Appellant answered Maria's phone, and informed her daughter that Maria was out Christmas shopping. When her mother still had not returned any of her calls on December 7, Maria's daughter informed Maria's mother of the loss of contact.

Maria's mother drove to Maria's home and found it in disarray. This was unusual, as Maria kept her home very ordered for her autistic son. Now very concerned, Maria's mother took pictures of the house and reported her daughter missing.

Philadelphia police opened a missing person investigation. When officers searched her house, they became highly concerned, noting broken windows, dented drywall, and drag marks leading out the front door. They also discovered that Maria's car was missing.

The officers used the OnStar service to locate Maria's car at a motel in Maple Shade, New Jersey. When Maple Shade police responded to the scene, they found the car empty. The motel clerk informed the officers that Appellant had rented a room there.

Officers interviewed Appellant and found him to be confused and somewhat befuddled. He stated that Maria had left with another female, but had not come back yet. Appellant knew that it was Sunday, but had no recollection of Saturday. Officers believed he was intoxicated.

A search of the motel room revealed that it also was in extreme disarray, but Maria was not present. The keys to Maria's car were found on the floor, and officers used them to discover Maria's decomposing body in the trunk of her car, bound and wrapped in blankets. White paint was found on her body.

Officers then searched Appellant and found heroin and cocaine. While driving him to the police station, Appellant was hysterical and cried uncontrollably. While in his cell, he vomited through the night.

Dr. Ian Hood, Chief Medical Examiner of Burlington County, New Jersey, performed on autopsy on Maria. He opined that Maria had been killed in the early morning of December 6, and her body had been stored somewhere with a temperature over seventy degrees. There were no medical indications of a struggle, but some of the stones from her jewelry were missing. Other than an extremely low level of alcohol, which may have been caused by decomposition, there was no evidence of any drugs in her system.

Under the circumstances, Dr. Hood could not rule out asphyxia as a cause of death. As a result, he ruled Maria's death a homicide by unspecified means.

Forensic evidence placed Maria's and Appellant's cell phones in close proximity through the night of December 5 into the early morning of December 6. Maria's phone was used in the area of her home to answer three calls on the afternoon of December 6.

Appellant deleted Maria as a contact on his phone at 12:46 a.m. on Saturday, December 6. After receiving a text from Maria's daughter, he deleted her daughter as a contact. He deleted another contact after it called him six times on Sunday morning.

Important to Appellant's issues on appeal, the phone was used to search pornographic websites during the morning of December 6.

Maria's neighbors testified at trial that they heard Maria and Appellant arguing at about 9:30 p.m. on December 5. The argument was loud, and they heard hammering and wood breaking. At some point during the argument, they heard glass breaking.

One neighbor spoke with Appellant on the porch of Maria's house on December 6. She saw no paint or splatter marks. However, she observed paint and splatter marks on Maria's porch on December 7.

The neighbors noted that Maria's car was parked in front of their home in the early morning of December 7. However, it was gone by noon.

Appellant presented expert testimony that suggested that Maria died from a drug overdose and that Appellant had merely attempted to dispose of the body.

After he was sentenced, Appellant did not file any post-sentence motions, but did file this timely appeal. Both he and the trial court complied with the dictates of Pa.R.A.P. 1925.

On June 12, 2018, a jury found Appellant guilty of the aforementioned offenses. The trial court sentenced Appellant as delineated above on August 22, 2018. Appellant did not file any post-sentence motions. On September 6, 2018, Appellant filed a timely notice of appeal.[3]

In his first issue on appeal, Appellant complains the trial court erred in admitting the testimony of Detective Sarah Hyde regarding his use of a cell phone to search pornographic websites in the hours following Maria's death but before he moved her body. *See* Appellant's Brief, at 16-21. Specifically, Appellant claims the evidence was irrelevant, highly prejudicial, and admitted in violation of Pa.R.E. 403 and 404(b). *See id.* at 14, 16-21. We disagree.

Our standard of review is settled:

With regard to evidentiary challenges, it is well established that [t]he admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. Furthermore, if in reaching a conclusion the trial court overrides or misapplies the

---

[3] On December 12, 2018, pursuant to the trial court's order, Appellant filed a concise statement of errors complained of on appeal. On January 3, 2019, the trial court filed an opinion.

law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. Serrano*, 61 A.3d 279, 290 (Pa. Super. 2013) (citation and quotation marks omitted).

Initially, to the extent Appellant contends Detective Hyde's testimony was improperly admitted Rule 404(b) evidence and was irrelevant, he waived the claims. Rule 404(b) provides in pertinent part:

*(1) Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

*(2) Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

In contrast, Pennsylvania Rule of Evidence 403 provides in pertinent part:

The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

"Unfair prejudice" means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially.

Pa.R.E. 403.

Our review of the record demonstrates Appellant only objected to the admission of the evidence on the ground of unfair prejudice and never raised the issues of irrelevancy or a violation of Rule 404(b). *See* N.T. Trial, 6/06/18, at 197.

"Where a specific objection is interposed, other possible grounds for the objection are waived." **Commonwealth v. Shank**, 883 A.2d 658, 672 (Pa. Super. 2005) (citation omitted). Because Appellant did not object to the admission of the evidence on the grounds of irrelevancy or as a violation of Rule 404(b), he waived these claims. **See id.** at 672.

Moreover, Appellant did not raise these claims in his Rule 1925(b) statement, wherein he only argued, "the prejudicial effect of such evidence far outweighed any probative value." Supplemental Statement of Errors Complained of on Appeal, 12/12/18, at unnumbered page 2. Because of this, the trial court did not address these claims in its Rule 1925(a) opinion. **See** Trial Court Opinion, 1/3/19, at 18.

As amended in 2007, Pennsylvania Rule of Appellate Procedure 1925 provides that issues that are not included in the Rule 1925(b) statement or raised in accordance with Rule 1925(b)(4) are waived. **See** Pa.R.A.P. 1925(b)(4)(vii); **see also Commonwealth v. Heggins**, 809 A.2d 908, 911 (Pa. Super. 2002) ("[A Rule 1925(b)] [s]tatement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent to no [c]oncise [s]tatement at all."); **Commonwealth v. Lord**, 719 A.2d 306, 308 (Pa. 1998), *superseded by rule on other grounds as stated in*

*Commonwealth v. Burton*, 973 A.2d 428, 431 (Pa. Super. 2009). Thus, Appellant waived his relevancy and Rule 404(b) claims for this reason as well.[4]

Appellant claims the admission of the evidence violated Rule 403 because it was unfairly prejudicial.[5] We disagree.

A court may exclude evidence if the probative value is outweighed by the danger of unfair prejudice. *See* Pa.R.E. 403. However, "[e]vidence is not unfairly prejudicial simply because it is harmful to the defendant's case." *Commonwealth v. Page*, 965 A.2d 1212, 1220 (Pa. Super. 2009) (citation omitted). Our Supreme Court has stated a trial court is not "required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged." *Commonwealth v. Lark*, 543 A.2d 491, 501 (Pa.

_____

[4] In any event, we are not persuaded by Appellant's almost total reliance on Rule 404(b) and case law discussing prior bad acts evidence in its argument. Appellant's Brief, at 18-20. Rule 404(b) concerns the admission of evidence of prior acts or crimes which are not part of the crime at issue. Here, as noted above, the evidence in question concerned Appellant's activities immediately following Maria's death but prior to his moving of the Maria's body. As such it was *res gestae* evidence. *See Commonwealth v. King*, 959 A.2d 405, 417 n.3 (Pa. Super. 2008). The evidence was therefore highly probative of Appellant's state of mind at the time of Maria's death and was admissible. *See id*. at 417.

[5] It is not entirely clear defense counsel properly preserved this claim for our review as she appeared to agree with the trial court's ruling at the time. N.T. Trial, 6/08/18, at 68-69. However, because the record is equivocal, we will address the claim on the merits.

1988); *see also Page*, 965 A.2d at 1220. Exclusion of evidence on the grounds it is prejudicial is "limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case." *Commonwealth v. Foley*, 38 A.3d 882, 891 (Pa. Super. 2012).

Here, we agree with the trial court and the Commonwealth, the evidence Appellant viewed pornography on his phone immediately following the murder was part of the history and development of the events, and probative both of his state of mind and to rebut his defense he was in a cocaine-induced delirium. The Commonwealth charged Appellant with murder in the third degree. Our Supreme Court has stated:

> Regarding third degree murder . . . the statute simply states, "All other kinds of murder shall be murder of the third degree." [18 Pa.C.S.A.] § 2502(c). Importantly, § 2502(c) does not set forth the requisite *mens rea* for third degree murder; however, § 302(c) of the Crimes Code provides, "When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts **intentionally**, **knowingly** or **recklessly** with respect thereto." *Id.*, § 302(c) (emphasis added).
>
> Case law has further defined the elements of third degree murder, holding:
>
>> [T]o convict a defendant of the offense of third[ ]degree murder, the Commonwealth need only prove that the defendant killed another person with malice aforethought. This Court has long held that malice comprehends not only a particular ill-will, but . . . [also a] wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured.

- 9 -

This Court has further noted:

> [T]hird degree murder is not a homicide that the Commonwealth must prove was committed with malice and without a specific intent to kill. Instead, it is a homicide that the Commonwealth must prove was committed with malice, but one with respect to which the Commonwealth need not prove, nor even address, the presence or absence of a specific intent to kill. Indeed, to convict a defendant for third degree murder, the jury need not consider whether the defendant had a specific intent to kill, nor make any finding with respect thereto.

*Commonwealth v. Fisher*, 80 A.3d 1186, 1191 (Pa. 2013) (some citations omitted). Malice can be inferred from the totality of the circumstances. *Commonwealth v. Windslowe*, 158 A.3d 698, 709 (Pa. Super. 2017).

Here, because of the particular and peculiar circumstances of this case, where the decomposed remains of Maria made it exceedingly difficult to prove the means of death, and where there were no witnesses to the crime, the Commonwealth had to prove malice through the totality of the circumstances. Our Supreme Court has held a jury can infer malice from actions taken after the victim's death. *See Commonwealth v. Boyd*, 334 A.2d 610, 614 (Pa. 1975) (holding jury was entitled to infer malice from defendant's failure to seek aid for victim after he shot her). Evidence that Appellant, in the hours immediately following the homicide, sat in Maria's residence, while her body decomposed, and watched pornography on his cellular phone, was probative of malice and thus, the trial court properly admitted it.

Moreover, the trial court properly admitted the evidence to rebut Appellant's defense. Despite Appellant's protestations to the contrary on appeal, *see* Appellant's Brief, at 14-15, his defense at trial was, "while [Appellant] was in a drug induced stupor, he discovered [Maria's body]. And then he panicked, and in an incredibly irrational moment, he put her in the trunk, he destroyed the house, he fled to New Jersey. . . ." N.T. Trial, 6/05/18, at 172; *see also* N.T. Trial 6/06/18, at 120-21 (defense counsel elicited testimony from Commonwealth's expert on whether destruction of house was consistent with person acting in state of drug-induced delirium); *id.* at 161 (confirming Appellant's prior history of drug-induced delirium); N.T. Trial 6/07/18, at 103 (confirming police confiscated drugs from Appellant's person at time of arrest); and N.T. Trial, 6/11/18, at 27 (testimony from defense expert discussing whether viewing pornography was inconsistent with being in drug-induced delirium).

Under these circumstances, testimony that for approximately one hour after the murder Appellant watched internet pornography was certainly probative of his mental state. **See Commonwealth v. Gelber**, 594 A.2d 672, 680 (Pa. Super. 1991) (holding defendant's history of drug dealing properly introduced to rebut self-defense claim and show defendant killed dealer to obtain drug for resale).

Furthermore, the probative value of the evidence is not outweighed by a danger of unfair prejudice. Pa.R.E. 403. Detective Hyde's testimony was

brief, factual, and in chronological order. N.T. Trial, 6/08/18, at 100-22. She discussed all of Appellant's cellphone activity from the period immediately preceding the murder on December 6, 2014 through the following morning, December 7, 2014, giving no particular emphasis to any part of the activity. While describing the websites in question as appearing to be "pornographic," *Id.* at 107, and noting some were live-stream sites, she did not otherwise describe them. *Id.* at 107, 108-11, 113, 120-22. The Commonwealth did not show the jury any of the actual streams or websites Appellant watched and did not elicit any descriptions of what the websites contained. *See id.*

The testimony in question elicited factual information—Appellant viewed pornography during a one hour period following the death of Maria then viewed it again some hours later—nothing more. Given this, we cannot say this dry recitation was more prejudicial than probative particularly in light of the graphic testimony about Appellant's role in destroying the victim's residence and rendering her body in a decomposed condition. Therefore, we reject Appellant's claim this evidence was unfairly prejudicial, and conclude the jury was properly permitted to hear the evidence of Appellant's cell phone activity and draw its own inferences. *See Lark*, supra 543 A.2d at 501; *Page*, 965 A.2d at 1220.

In his second and final claim, Appellant contends the trial court erred in failing to instruct the jury on voluntary and involuntary manslaughter. *See* Appellant's Brief, at 21-30. We disagree.

We briefly note:

> In reviewing a jury charge, we determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. We must view the charge as a whole; the trial court is free to use its own form of expression in creating the charge. A trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Moreover, it is well-settled that the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties[,] and its refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal.

*Commonwealth v. Williams*, 176 A.3d 298, 314 (Pa. Super. 2017) (quotation marks and citations omitted), *appeal denied*, 187 A.3d 908 (Pa. 2018).

Here, the trial court did not err in finding the instruction for voluntary manslaughter was not warranted. A trial court should instruct as to "heat of passion" voluntary manslaughter "only where the offense is at issue and the evidence would support such a verdict." *Commonwealth v. Sanchez*, 82 A.3d 943, 979 (Pa. 2013) (citations omitted). Further, "[a]n objective standard is applied to determine whether the provocation was sufficient to support the defense of . . . voluntary manslaughter. The ultimate test for adequate provocation remains whether a reasonable man, confronted with this series of events, became impassioned to the extent that his mind was incapable of cool reflection." *Commonwealth v. Miller*, 987 A.2d 638, 649-650 (Pa. 2009).

Thus, to support a voluntary manslaughter verdict, "the evidence would have had to demonstrate that, at the time of the killing, [a]ppellant acted under a sudden and intense passion resulting from *serious provocation by the victim*." **Id.** (citation omitted) (alteration in original) (emphasis added). Again, we will reverse a trial court's decision to deny a requested jury instruction "only when it abused its discretion or committed an error of law." **Commonwealth v. Baker**, 24 A.3d 1006, 1022 (Pa. Super. 2011) (citation omitted).

Here, while there was evidence Appellant destroyed Maria's home, both the Commonwealth's expert Dr. Hood and the defense expert, Dr. Wetli testified the condition of the home was not consistent with a violent struggle but was consistent with a single individual acting in a drug-induced delirium. N.T. Trial, 6/06/18, at 120; N.T. Trial 6/11/18, at 25-27. Moreover, while there was evidence Maria and Appellant engaged in verbal argument earlier in the evening, Maria's neighbor, Margaret McGettigan, who overheard the argument, testified while Appellant was yelling, Maria's voice was "calming. It was never raised. It was level. It didn't go up and down. It was level." N.T. Trial, 6/07/18, at 140. She further stated at one point Maria came outside onto her porch and the two spoke and Maria said, "she was fine; that she wasn't worried." **Id.** There is nothing in this evidence which would justify a finding that Maria had provoked Appellant, let alone sufficiently provoked him

"to create uncontrollable passion in a reasonable person." ***Commonwealth v. Martin,*** 5 A.3d 177, 186 (Pa. 2010).

Moreover, the instruction was at odds with Appellant's defense that he merely found Maria's body. We note trial counsel initially admitted this, telling the court the evidence did not support a voluntary manslaughter instruction because "we would have had to put up a self-defense case, which we did not." N.T. Trial, 6/08/18, at 172. The court did not abuse its discretion or err when it denied Appellant's request.

Appellant also claims the trial court erred in refusing to instruct the jury on involuntary manslaughter. A defendant to a murder charge is entitled to instruction on involuntary manslaughter "only when requested, and where the offense has been made an issue in the case and the trial evidence would reasonably support such a verdict." ***Commonwealth v. White***, 415 A.2d 399, 402 (Pa. 1980). However, "[i]t has long been the rule in this Commonwealth that a trial court should not instruct the jury on legal principles which have no application to the facts presented at trial." ***Id.*** at 400.

The statutory definition of involuntary manslaughter is as follows:

A person is guilty of involuntary manslaughter when as a direct result of doing an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person.

18 Pa.C.S.A. § 2504(a).

Here, Appellant's expert, Dr. Wetli, disagreed with the Commonwealth's expert, Dr. Hood regarding the cause of death, he speculated Maria "could

- 15 -

have died from homicide by unspecified means or from a drug overdose, accident, suicide, or other means."[6] N.T. Trial, 6/11/18, at 13. However, this testimony is both speculative and does not point to any reckless or grossly negligent act by Appellant. Appellant also argues his allegedly drug-induced delirium on the night in question caused him to behave "unpredictably." Appellant's Brief, at 25. However, again, he points to no evidence of record showing this alleged unpredictability led to a reckless or grossly negligent act which caused Maria's death.

Further, these statements are inconsistent with his defense at trial. We have clearly stated a defendant is not entitled to an instruction on involuntary manslaughter where he denies committing any act causing the victim's death. *Commonwealth v. Wright*, 865 A.2d 894, 917 (Pa. Super. 2004). Appellant's claim the trial court erred in failing to instruct the jury on voluntary and involuntary manslaughter does not merit relief.

Appellant's issues are either waived or lack merit. Thus, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge Colins joins the memorandum.

Judge Strassburger files a concurring memorandum.

---

[6] This testimony was rebutted by Dr. Hood's testimony he did not find any drugs in Maria's system and had used expanded testing to look for non-typical drugs. N.T. Trial, 6/06/18, at 96-97.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>6/8/20</u>